UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        *Plaintiff,*

v.                                                          Case No. 23-cr-31-wmc

HRIDINDU SANKAR ROYCHOWDHURY,

        *Defendant.*

---

## MOTION TO SUPPRESS

Hridindu Roychowdhury, by counsel, moves to suppress the search warrant for his home and the fruits of that search, as well as the search of his cellphone seized upon his arrest in Boston. The warrants are attached as Exhibits A and B. Concerning the warrant for the home, there are two principal arguments for suppression. First, the affidavit did not establish a nexus between the crime and the home—the probable cause (if it ever existed) had grown stale over the intervening ten months. Second, the affidavit spelled out no reason for extending the search of Roychowdhury's home to the search of all the electronic devices found there. Nothing in the affidavit provided an allegation, let alone facts, tying any electronics to the crime or that Roychowdhury owned or used any electronics. Concerning the electronics seized in Boston, there are no allegations tying them to the crime and the thirty-seven days that elapsed between the seizure and applying for the search warrant was unreasonable. Thus, as explained more fully below, the search warrants must be quashed and the fruits of those searches suppressed.

1                                                                              FEDERAL DEFENDER SERVICES
                                                                                      OF WISCONSIN, INC.

I. **The factual background as contained in the search warrant affidavit.**

Last spring, after the *Dobbs* opinion had been leaked, police responded to a fire at a pro-life organization's headquarters.[1] It was a politically motivated arson—the graffiti supporting abortion rights erased any doubt as to the motive.[2] Inside the office, police found the makings of a Molotov cocktail and on several pieces of evidence the officers found DNA.[3] But when nothing from the various DNA databases matched up with it and the so-called electronic sweeps came up with nothing, the case went cold.

Then, a full seven months later in late January, the officers got a break. According to the search warrant affidavit, they saw a video from a protest at the Capitol where a suspect had used the same distinct cursive style graffiti as was used at the fire.[4] The warrant spells out the detective work that followed. The officers traced Roychowdhury to the graffiti at the Capitol. Then after trailing Roychowdhury, officers saw him discard some fast food. Officers recovered a half-eaten burrito; extracted his DNA; and then matched it to several pieces of evidence from the crime scene.[5] Officers also discovered that the car Roychowdhury drove during the Capitol protest was registered to the Coolidge residence at issue in the search warrant.[6] The Wisconsin DOT and Experian confirmed that it was Roychowdhury's residence.[7] After those paragraphs spelling out the probable cause linking Roychowdhury to the fire, the search warrant affidavit has

---

[1] Ex. A, ¶ 4.
[2] *Id.* ¶ 7.
[3] *Id.* ¶¶ 8–10.
[4] *Id.* ¶¶ 17–18.
[5] *Id.* ¶¶ 28–30.
[6] *Id.* ¶ 20–22.
[7] *Id.* ¶ 23.

eleven pages of boiler-plate relating to electronic devices—nothing in those paragraphs is case specific.[8]

This is how the affidavit breaks down in terms of the allegations:

| ¶¶ 1–2 | The affiant's experience |
|---|---|
| ¶¶ 4–16 | That the arson occurred and DNA was recovered at the scene |
| ¶¶ 17–22 | Roychowdhury is tied to graffiti that matches what was found at the scene |
| ¶ 23 | Experian and DOT records tie him to the Coolidge address |
| ¶¶ 24–30 | Officers recovered his DNA and it matched items at the scene. |
| ¶¶ 31–32 | Roychowdhury was traveling to Guatemala |
| ¶¶ 33–41 | Boilerplate about the electronics |

And those allegations provide the following timeline of events, with days that elapsed after the fire noted in the far column:

| Date | Event | Days Elapsed |
|---|---|---|
| May 8, 2022 | Arson | NA |
| Jan. 23, 2023 | Graffiti at the capitol | 261 |
| Mar. 1, 2023 | Garbage pull for the half-eaten burrito | 298 |
| Mar. 17, 2023 | DNA profile match | 314 |
| Mar. 28, 2023 | Search warrant for the home signed | 323 |

---

[8] *Id.* ¶¶ 33–41.

The day the police obtained the search warrant for the home, they also arrested Roychowdhury. On his person was a cell phone and a MacBook.[9] Those were seized and kept in law enforcement's control. And after Roychowdhury had been transported to Wisconsin and arraigned, the FBI sought permission to search those devices. That was on May 4, 2023—a full thirty-seven days after they were seized. Because this is a facial attack on both warrants, the facts at issue are confined to the warrant's four-corners.[10]

## II. The warrant does not provide a nexus between the crime and the home or any of the devices there.

At the outset, it's important to be clear that there is probable cause to link Roychowdhury to the arson—no question. But for purposes of this motion, it's equally important to separate facts alleged in the affidavit establishing criminal conduct from allegations that there was probable cause to search his home and devices. Establishing a nexus between the location of criminal acts and the location of potential evidence is (as the Supreme Court has observed) the Fourth Amendment's indispensable demand: "There must . . . be a nexus . . . between the item to be seized and criminal behavior."[11] The question isn't whether a person is suspected of a crime, but whether "there is reasonable cause to believe that the specific 'things' to be searched for and seized *are located on the property to which entry is sought*."[12] To establish that connection, there must be some factual bridge between the items that are evidence of the suspected criminal

---

[9] Ex. B. ¶ 35.
[10] *United States v. Koerth*, 312 F.3d 862, 866 (7th Cir. 2002).
[11] *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 307 (1967); *United States v. Church*, 823 F.3d 351, 355 (6th Cir. 2016) (quotations and citations omitted); *see United States v. Wiley*, 475 F.3d 908, 917 (7th Cir. 2007).
[12] *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978) (emphasis added).

activity and the home.[13] Put more plainly, "the [warrant] application must demonstrate probable cause to believe that enumerated evidence of the offense will be found at the place to be searched, which is known as the nexus element."[14]

The nexus element's analysis is informed by two basic principles. First, probable cause cannot be established by the mere assertion that evidence is likely to be found at a suspect's home simply because there is evidence the suspect committed a crime.[15] Thus, when an affidavit simply states that the suspect resided at the address listed on the warrant and was arrested for a crime somewhere else, courts have held that "these averments are insufficient to establish probable cause because they do not establish the requisite nexus between the place to be searched and the evidence to be sought."[16] Second, there have to be specific and concrete (rather than vague and generalized) allegations tying the suspect's criminal behavior to the place searched.[17] Rooted in the Fourth Amendment, those principles cannot be glossed over in the name of expediency—namely, "we got our man, now let us search it all." As one court succinctly put it: "[S]earch warrants are directed against evidence of crime and not persons. The fact that there is probable cause to arrest a person . . . does not automatically give police probable

---

[13] *United States* v. *Elst*, 579 F.3d 740, 745 (7th Cir. 2009).
[14] *United States v. Cordero-Rosario*, 786 F.3d 64, 69 (1st Cir. 2015) (quotations and citations omitted).
[15] *United States v. Watts*, 535 F.3d 650, 656 (7th Cir. 2008).
[16] *United States v. McPherson*, 469 F.3d 518, 524 (6th Cir. 2006) (cleaned up).
[17] *See, e.g., Wiley*, 475 F.3d at 916; *United States v. Brown*, 828 F.3d 375 (6th Cir. 2016).

cause to search his residence or other area in which he has been observed."[18] Rather, the nexus must be spelled out in the affidavit.[19]

### A. The affidavit doesn't tie the crime to Roychowdhury's home.

The affidavit at issue here doesn't supply any allegations or facts that create a bridge between the arson and the home. Law enforcement could, of course, forge that link in many, many different ways.[20] In some cases, it's because of the nature of the criminal conduct—on-going criminal conduct suggests a higher probability that items are in the home.[21] In other cases, it can be the proximity of the home and the crime.[22] And in some cases, courts have upheld the nexus based on the officer's experience that certain types of criminals keep their wares in their homes.[23] When it comes to probable cause, everything is fact specific.[24] And here, nothing in the affidavit alleges the type of facts establishing a nexus between the arson and Roychowdhury's home—nothing suggests that this was anything other than an isolated event; nothing alleges a close proximity between the crime scene and the residence; and nothing alleges that based on the affiant's robust experience with arsonists, she knows they usually keep the evidence in their homes.[25]

---

[18] *United States v. Savoca*, 739 F.2d 220, 224 (6th Cir. 1984).
[19] *Hayden*, 387 U.S. at 307; *Illinois v. Gates*, 462 U.S. 213, 239 (1983). *See Cordero-Rosario*, 786 F.3d at 71.
[20] Wayne LaFave, 2 Search & Seizure § 3.7(d) (6th ed.) (Nexus between crime, objects and place).
[21] *U.S. v. Fisher*, 137 F.3d 1158, 1164 (9th Cir. 1998).
[22] *United States v. Sleet*, 54 F.3d 303, 306-07 (7th Cir. 1995); *United States v. Jones*, 994 F.2d 1051, 1052-53 (3d Cir. 1993)
[23] *United States v. Ramos-Cruz*, 667 F.3d 487, 502 (4th Cir. 2012); *United States v. Laury*, 985 F.2d 1293, 1314 (5th Cir. 1993); *United States v. Sumlin*, 956 F.3d 879, 886 (6th Cir. 2020).
[24] *Hayden*, 387 U.S. at 307; *Gates*, 462 U.S. at 239 (1983). *See Cordero-Rosario*, 786 F.3d at 71.
[25] *United States v. Scott*, 901 F.3d 842, 844-45 (7th Cir. 2018).

Despite the admonition that everything in the affidavit has to be spelled out establishing probable cause, there are cases where given the nature and closeness in time (assuming other allegations supply the basis) courts have found what can only be described as an implied nexus.[26] But this is not the type of case where common sense could assume such an otherwise fact-specific link—even if it's not spelled out. Here, the timeline is key. While the government could argue that it was reasonable in early- or mid- or (maybe even) late-May to assume that Roychowdhury may have had some evidence of the arson at his home, the reasonableness of that assumption dissipates with time.[27] Indeed, while courts have held that given the nature of the chattel it's reasonable to think that stolen goods might be kept around for a couple months, it's not reasonable to think that drugs or other evidence would be kept for long.[28] To be clear: when it comes to staleness, there are no hardlines with how long is too long.[29] But here, nothing in the nature of the crime or facts specific to *this* crime make it likely to believe that Roychowdhury (or anyone else) would keep the items sought for over 300 days—that's especially true since there is no allegation that Roychowdhury lived at *that* residence in May 2022.

---

[26] LaFave, *supra* § 3.7(d); *United States v. Salamanca*, 990 F.2d 629, 634 (D.C. Cir. 1993).

[27] *United States v. Musgraves*, 831 F.3d 454, 460 (7th Cir. 2016); *United States v. Laughrin*, 438 F.3d 1245, 1247-48 (10th Cir. 2006); *United States v. Prideaux-Wentz*, 543 F.3d 954, 958 (7th Cir. 2008); *United States v. Zimmerman*, 277 F.3d 426, 435-36 (3rd Cir. 2002).

[28] William Ringel, Searches and Seizures Arrests and Confessions § 4:8 (2d ed.) (discussing cases); *see also Musgraves*, 831 F.3d at 460 (drugs); *United States v. Barfield*, 507 F.2d 53, 58 (stolen goods).

[29] Ringel, *supra* § 4.8; *see also United States v. Kennedy*, 427 F.3d 1136, 1141 (8th Cir. 2005); *United States v. Iiland*, 254 F.3d 1264, 1269 (10th Cir. 2001).

In the end, the Court is analyzing the totality of the circumstances to see whether the affiant has offered facts that would provide a reasonable probability that there is a nexus between the crime in May 2022 and the residence in March of 2023. The connection between the residence and the evidence of criminal activity must be specific and concrete, not "vague" or "generalized."[30] And here, the affidavit doesn't supply that link. There is nothing concrete tying the crime in May 2022 to the home in March 2023—there is, in fact, nothing tying the crime to the home. And even if the government could shrug and say that despite the Supreme Court's commands quoted above about a nexus being laid, it's common sense that a criminal must go home and that's enough, the affidavit doesn't support that inference. For one, there is nothing in it establishing that in May of 2022 Roychowdhury lived at the home or just moved there in the past weeks or months. And for another, while it's impossible to peg a precise date when it became unreasonable to assume that evidence of the arson would lie around, ten months and twenty days surpasses what could ever be considered a reasonable inference.[31] And thus, the search warrant must be quashed and the evidence suppressed.

---

[30] *United States v. Brown*, 828 F.3d 375 (6th Cir. 2016)
[31] Ringel, *supra* § 4.8.

### B. The are no allegations that would suggest there is probable cause to seize and search all of Roychowdhury's devices.

The second problem with the warrant relates to the lack of allegations that there would be any evidence of the arson on Roychowdhury's devices. To be clear, if only this second argument succeeds, it would not quash the entire warrant for the residence but only that evidence which was seized as it related to the electronic devices in his home.

In recent years, courts have been quick to note how cellphones are entitled to special protection under the Fourth Amendment: they can't be searched incident to arrest; they must be searched under a warrant.[32] Pertinent to the case here, the Supreme Court noted that any "inexperienced or unimaginative law enforcement officer" could come up with "several reasons to suppose evidence of just about any crime could be found on a cell phone."[33] That observation doesn't do away with the nexus requirement; rather, it highlights how *little* an officer would have to do to meet it.[34] Yet, the police still have to meet it.

Illustrating that point, in *Griffith*, the D.C. Circuit analyzed the sufficiency of an affidavit supporting a search warrant for a suspect's apartment and found it fell well below the probable-cause standard: "*The affidavit supporting the warrant application provided virtually no reason to suspect that Griffith in fact owned a cell phone, let alone that any phone belonging to him and containing incriminating information would be found in the*

---

[32] *See United States v. Bell*, 925 F.3d 362, 369-70 (7th Cir. 2019) (citing *Riley v. California*, 573 U.S. 373, 401 (2014)).
[33] *Riley*, 573 U.S. at 399.
[34] *Id*.

*residence.*[35] There, the affidavit provided: "Based upon . . . professional training and experience . . . I know that gang members . . . share intelligence about their activities through cell phones . . . Based on the aforementioned facts . . . and . . . affiant's experience and training, there is probable cause to believe" that evidence relating to the homicide was hidden in the apartment.[36] Here, the affidavit doesn't even provide that. There is nothing.

Again, the affidavit establishes probable cause to suspect that Roychowdhury was involved with the arson—his DNA was at the scene. But this isn't an arrest warrant, it's a search warrant. And a search warrant requires a probable cause showing that provides a nexus between the alleged criminal activity and the things to be searched: "There must [be a nexus] between the item to be seized and criminal behavior."[37] Nothing in the affidavit suggests that Roychowdhury possessed a cellphone during the commission of this crime. Nothing in the affidavit suggests or alleges that he even owns a cellphone or a computer. Instead, the affidavit provides ten pages of boilerplate about the uses and features of electronic devices, particularly cell phones. And as one court has held: "[a] mere boilerplate recitation about the use and features of cellphones is not enough."[38] Instead, officers must allege a nexus, a nexus grounded on specific allegations that establish probable cause to link those devices to the crime.

---

[35] *United States v. Griffith*, 867 F.3d 1265, 1270 (D.C. Cir. 2017) (emphasis added).
[36] *Id.* at 1269.
[37] *Hayden*, 387 U.S. at 307.
[38] *United States v. Tirado*, 2018 WL 3245204, *16 (E.D. Wis. Jan. 26, 2018), *adopted by* 2018 WL 1806056 (E.D. Wis. Apr. 16, 2018).

Instead of investigating and establishing probable cause to believe Roychowdhury had any of these devices and that they were linked to the crime, the officers drafted an overly broad search warrant using boilerplate language. In so doing, they never established (1) that he ever had a phone or computer, (2) that he had a phone or computer at the time this crime was committed, or (3) that the phone or computer would contain evidence of the crime. As a result, the warrant doesn't match the basic Fourth Amendment demands, and it cannot be upheld.[39] Thus, all evidence from Roychowdhury's devices must be suppressed.

### III. The search warrant for Roychowdhury's cell phone and computer that were seized in Boston must be suppressed.

There are two arguments for suppressing the fruits of the search at issue in the second search warrant. The first mirrors what's been argued above—namely, there was no connection between the arson and the devices. The second warrant doesn't add any detail that would supply that connection and (unlike the first) it does provide reason to believe that Roychowdhury had both a cellphone and a computer. Despite that allegation, there is nothing that connected *those* devices or *any* devices to the arson and thus for the same reasoning expressed above, the warrant should be quashed. There is no reason to copy-and-paste it all. The second argument centers on the thirty-seven day delay between officers seizing Roychowdhury's phones and applying for the search warrant.

---

[39] *See Church*, 823 F.3d at 355.

The caselaw around this issue is straightforward. "After seizing an item without a warrant, an officer must make it a priority to secure a search warrant that complies with the Fourth Amendment."[40] That command stems from the Fourth Amendment's reasonableness requirement; as the Seventh Circuit observed in *Burgard*, "[e]ven a permissible warrantless seizure" of property must "comply with the Fourth Amendment's reasonableness requirement."[41] Thus, after seizing an item, the police must get a search warrant "within a reasonable period of time."[42] The reasonableness test demands that the court balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the government's interests.[43]

On one side the scale, there is the defendant's "possessory interest" in his devices and the length of the delay in obtaining the warrant.[44] As the Supreme Court has emphasized, cell phones "differ in both a quantitative and a qualitative sense from other objects."[45] The "sum" of a person's private life "can be reconstructed" by rummaging through his or her phone.[46] To put it mildly, Roychowdhury had "a strong interest in possessing [his] cell phone."[47] On top of his significant interest in his phone, the length of the delay created a greater infringement than what courts tolerate as "reasonable."[48]

---

[40] *United States v. Burgard*, 675 F.3d 1029, 1035 (7th Cir. 2012); *see also Segura v. United States*, 468 U.S. 796, 812 (1984).
[41] *Burgard*, 675 F.3d at 1032.
[42] *Id.*
[43] *Id.* at 1033 (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)).
[44] *Id.*
[45] *Riley*, 573 U.S. at 393.
[46] *Id.* at 394.
[47] *See Burgard*, 675 F.3d at 1034.
[48] *Id.* at 1033.

This wasn't a matter of days or two weeks, which courts have found to be reasonable.[49] Here, the delay was over a month long—thirty-seven days to be precise. And that span is far greater than lesser intervals held to be unreasonable. For example, the Eleventh Circuit has held that a twenty-one-day delay is unreasonable, and the Fourth Circuit has held that thirty-one days is unreasonable.[50] The delay here was greater than both of those.

On the other side of the scale is the government's interests and the reasons for the delay. Courts frame the inquiry around whether the police "diligently pursue[d] their investigation."[51] Where there's no "good explanation" for the delay, the intrusion on the person's Fourth Amendment possessory interest isn't justifiable.[52] Here, this wasn't a case where the delay in securing the warrant was attributable to an on-going investigation. The officers already knew every fact contained in the warrant application the day they seized the phones.[53] And the only difference between the warrant in Exhibit A (for the residence) and the warrant in Exhibit B (for the devices seized in Boston) is that the second warrant discusses the fact that when Roychowdhury was arrested those items were on his person. It doesn't take a month to craft an additional three sentences of text. Thus, the only explanation for the delay is that the police "didn't see any urgency" in getting the warrant.[54]

---

[49] *Id.* at 1034 (concluding that six-day delay was not unreasonable); *see also, e.g., United States v. Martin*, 157 F.3d 46 (2d Cir. 1998) (same as to eleven days).
[50] *United States v. Mitchell*, 565 F.3d 1347, 1350 (11th Cir. 2009); *United States v. Pratt*, 915 F.3d 266, 270 (4th Cir. 2019).
[51] *Id.* (quoting *Place*, 462 U.S. at 703).
[52] *Id.*
[53] *See id.*
[54] *See Mitchell*, 565 F.3d at 1351.

In sum, when it comes to the second search warrant the question is whether the delay here was reasonable. While a couple days, or even a two weeks, can be reasonable, the thirty-seven-day delay here was not. There was no need for further investigation; this wasn't a complicated affidavit; and everything in the affidavit of consequence was culled from the initial affidavit. As such, the "late-obtained warrant" must be quashed and the evidence suppressed. [55]

## IV.     Conclusion

The questions here are narrow and focused not on whether there is evidence to suspect Roychowdhury of the arson—but whether there is additional evidence tying it to the residence or the devices. Here, the affidavit is silent on both. Instead, it assumes that if there's probable cause to believe he did it, there's probable cause to search his home—over three hundred days later—and all of his devices. But one doesn't follow the other—particularly when nothing in the affidavit alleges that he had a phone or computer or that it would be likely to contain information related to the offense. As such, the search warrant for his residence must be quashed and the evidence suppressed. Furthermore, the search warrant for the items seized upon Roychowdhury's arrest must be suppressed for the same reasons as the first search warrant and because the delay in getting the warrant was unreasonable.

---

[55] *See Burgard*, 675 F.3d at 1035–36 ("When police fail to act with such diligence, exclusion will typically be the appropriate remedy.").

Dated at Madison, Wisconsin, this 6th day of June, 2023.

>Respectfully submitted,
>
>Hridindu Roychowdhury, Defendant
>
>*/s/ Joseph A. Bugni*
>Joseph A. Bugni
>Alexander P. Vlisides
>Associate Federal Defender
>FEDERAL DEFENDER SERVICES
>    OF WISCONSIN, INC.
>22 East Mifflin Street, Suite 1000
>Madison, Wisconsin 53703
>Tel: 608-260-9900
>Fax: 608-260-9901
>joseph_bugni@fd.org