IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
---

UNITED STATES OF AMERICA,

                Plaintiff,                      OPINION AND ORDER

v.

                                            23-cv-31-wmc

HRIDINDU SANKAR ROYCHOWDHURY,

                Defendant.

---

On April 5, 2023, a grand jury issued an indictment charging defendant Hridindu Sankar Roychowdhury with maliciously attempting to damage and destroy a building by means of fire or an explosive in violation of 18 U.S.C. § 844(i). (Dkt. #6.) Roychowdhury moves to dismiss on grounds that this federal arson statute is unconstitutional. (Dkt. #25.) The court will deny this motion without further discussion because, as Roychowdhury acknowledges, his motion is foreclosed by controlling Seventh Circuit precedent, *see United States v. Johnson*, 42 F.4th 743, 755 (7th Cir. 2002), and he simply wants to preserve it for purposes of a possible appeal. Roychowdhury also moves to suppress any evidence recovered in executing warrants to search his home and electronic devices (dkt. #24), on the grounds that: (1) the search warrants lacked a nexus between the crime and his home and electronic devices; and (2) an unreasonable amount of time elapsed between the seizure of electronic devices from his person and the application for the warrant to search them. For the following reasons, the court will deny this motion as well.

## FACTUAL BACKGROUND[1]

On May 8, 2022, Madison Police Department officers responded to the report of an active fire at an office building.  When police arrived, they noticed fire coming through a broken office window and a row of books lined up burning adjacent to the window.  After the fire was extinguished, police entered the building and found a mason jar under the broken window with the lid and screw top burned black, another mason jar on the opposite wall with a blue cloth tucked into the screw top, a purple disposable lighter, and a red handkerchief wrapped around the edge of some of the windowpane glass.  They also learned that the office where the items were found belonged to the president of a pro-life organization occupying the affected office suite and that maintains a website to promote its goals.  Finally, officers observed black graffiti on the west side of the building spray painted in cursive writing, threatening:  "If abortions aren't safe then you aren't either."  On the south-facing wall, officers found graffiti of a large "A" in a circle and the "1312," which stands for "All Cops Are Bastards."

DNA from three individuals was later recovered from multiple pieces of evidence. One DNA profile, "Male 1," was found on the top and bottom of the windowpane glass, the exterior of the mason jar used to start the fire, the lighter, the exterior of the other mason jar, and the blue cloth tucked into it.  Law enforcement received no hits on any of this DNA in CODIS, and cell tower data also failed to yield a suspect.

However, about 7 months later, officers reviewing surveillance footage from a

---

[1] Because Roychowdhury challenges the sufficiency of the affidavits supporting two search warrants, the court draws these facts from the affidavits (dkt. ##24-1, 24-2) unless otherwise indicated.

planned protest at the Wisconsin State Capitol noticed someone spray painting "We will get revenge" in cursive writing on the Capitol grounds. This writing looked similar to the graffiti at the office building. Additional surveillance camera footage also showed two suspects arrive and leave a parking lot in a white Toyota with license plates registered to a residence in Madison, Wisconsin. Law enforcement also later found an Instagram post about the planned protest that had received a "like" from an Instagram profile @Hridindu with the display name "Hridindu Roychowdhury."

On March 1, 2023, law enforcement retrieved a brown paper bag containing a half-eaten burrito that Roychowdhury had discarded in a parking lot. DNA evidence taken from that burrito matched the DNA of "Male 1" recovered from the arson evidence.

On March 28, 2023, Roychowdhury was arrested at the Boston airport as he was about to board a one-way flight to Guatemala. Later that same day, law enforcement sought and received a search warrant for his residence. The affidavit supporting the application for a warrant sought authorization to search for and seize information, records, documents, and items relating to violations of the arson statute, including a puffer jacket, spray paint, jeans, masks, and mason jars. It also sought authorization to seize any digital device:

> used to access the Internet and/ or store Internet communications, such as central processing units; desktop, laptop, notebook, and tablet computers; personal digital assistants; wireless communication devices, such as telephone paging devices, beepers, mobile telephones, and smart phones; digital cameras; gaming consoles (including Sony PlayStations and Microsoft Xboxes); peripheral input/ output devices, such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media; related communications devices, such as modems, routers, cables, and connections;

3

> storage media, such as hard disk drives, floppy disks, memory cards, optical disks, and magnetic tapes used to store digital data (excluding analog tapes such as VHS); and security devices; and
>
> Any electronic device used to facilitate the above-listed violations.

(Dkt. #24-1, ¶¶ l, 1m.)

In addition to the facts recounted above, the affiant attested that items possibly related to the crime were still likely to be present at defendant's last-known residence because the homeowner was scheduled to return to the residence in mid-September from Guatemala, and Roychowdhury had likely left belongings there even though he was about to leave to country. At that point, because law enforcement was not sure who might have stored electronic devices at the residence, the warrant permitted the seizure and search of all electronic devices found while stating that law enforcement would stop searching a device if it became clear that the device did not belong to Roychowdhury. Moreover, the affiant attested that electronic items left in the home "are likely to help identify the other people involved in the offense," and that files stored on electronic devices can be recovered even after deletion with forensic tools. (*Id.*, ¶¶ 32, 37a.)

The government indicates in its opposition brief that law enforcement found electronic devices in the home and additional Molotov cocktails in Roychowdhury's garage when they executed the search warrant. Following his arrest at the Boston airport, Roychowdhury has remained in federal custody. Incident to his arrest, officers also seized a cell phone and a laptop in his possession. The Boston FBI then processed and secured the cell phone and MacBook seized from Roychowdhury's person, pending shipment to

Wisconsin. These items traveled to the Milwaukee FBI office, then arrived at the Madison FBI office on April 27, 2023. Law enforcement sought and obtained a search warrant authorizing the forensic examination of the cell phone and MacBook one week later, May 4, 2023. The supporting affidavit for this second warrant generally recounted the same factual background as the first affidavit, adding information about Roychowdhury's arrest in Boston and the specific personal property seized from him at that time. (Dkt. #24-2. ¶¶ 31-36.) Further, the affiant again attested that there was probable cause to believe "things that were once stored on electronic storage devices may still be stored there" for various reasons and are recoverable even after deletion. (*Id.*, ¶ 40.)

OPINION

Defendant challenges the sufficiency of the respective affidavits provided in support of each search warrant issued by Magistrate Judge Crocker: the March 28 warrant authorizing law enforcement to search a residence in Madison where defendant was living (dkt. #24-1); and the May 4 warrant authorizing law enforcement to search items seized from defendant's person upon his arrest, including the cell phone and laptop (dkt. #24-2). The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "To establish probable cause, a warrant application must contain facts that, given the nature of the evidence sought and the crime alleged, allow for a reasonable inference that there is a fair probability that evidence will be found in a particular place." *United States v. Roland*, 60 F.4th 1061, 1064 (7th Cir. 2023) (citation omitted). Still, "[p]robable cause is a low bar that can be cleared

5

without a *prima facie* showing of criminal activity." *United States v. Rees*, 957 F.3d 761, 769 (7th Cir. 2020).

## I. Sufficiency of the Affidavit in Support of the Home Warrant

Defendant argues that the affidavit in support of the March 28 warrant to search his most recent Madison home did not sufficiently link the arson to the residence or to any electronic devices there. In issuing a warrant, however, the judge's task "is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Sims*, 551 F.3d 640, 644 (7th Cir. 2008) (quoting *United States v. Koerth*, 312 F.3d 862, 866 (7th Cir. 2002)). "There must, of course, be a nexus . . . between the item to be seized and criminal behavior." *Warden v. Hayden*, 387 U.S. 294, 306-07 (1967). And issuing judges must base their inferences on the information actually presented to them in the supporting affidavit. *United States v. Peck*, 317 F.3d 754, 755-56 (7th Cir. 2003).

Moreover, the reviewing court gives that judge's decision "great deference." *United States v. Bell*, 585 F.3d 1045, 1049 (7th Cir. 2009). Reversal is appropriate "only when the supporting affidavit, read as a whole in a realistic and common sense manner, does not allege specific facts and circumstances from which the [issuing judge] could reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated." *United States v. Spry*, 190 F.3d 829, 835 (7th Cir. 1999).

Applying this standard of review, the supporting affidavit easily supports the warrant as issued by Judge Crocker. As an initial matter, the warrant was sought less than

two weeks after law enforcement connected defendant to the arson via a DNA profile match, and the affidavit connected defendant to the crime and to the residence searched. (Dkt. #24-1, ¶¶ 21, 23.) "Simple common sense supports the inference that one likely place to find evidence of a crime is the suspect's home, at least absent any information indicating to the contrary." *United States v. Aljabari*, 626 F.3d 940, 945 (7th Cir. 2010). Here, the evidence being sought, such as a jacket, mason jars, lighters, and spray paint cans, included the kinds of items that could be stored in defendant's home, and left there while defendant traveled. However, because over 300 days had passed since the arson, defendant argues that any link between the crime and the residence was too stale absent an allegation that defendant was living at the residence when the arson occurred or facts suggesting that it was likely defendant would still have arson-related items some 10 months later. Still, a commonsense reading of the affidavit sufficiently establishes a reasonable probability that evidence would be found at the Madison residence where defendant was last living.

First, although it had been approximately 10 months since the arson, there was *no* information suggesting that defendant was living elsewhere in Madison at the time of the arson, or that there was a fair probability the evidence sought would be elsewhere. Second, the affiant affirmatively attests that the arson was politically motivated, and that defendant had continued his protest activities since the arson, having been involved in a protest only two months earlier, spray painting similar graffiti, and linking his vehicle to the residence. (Dkt. #24-1, ¶¶ 7, 17-21, 23.) Of course, law enforcement could not be *certain* that evidence of the arson would be found at the residence, but "neither an absolute certainty

7

nor even a preponderance of the evidence is necessary." *Aljabari*, 626 F.3d at 944. Third, without any suggestion defendant was aware of an ongoing investigation against him until his arrest at an airport, it would not be unreasonable to think that he may have kept items from the arson for use in other protest activities, especially items that would otherwise appear innocuous, such as spray paint cans, lighters, and mason jars.

In fairness, defendant also argues that the affidavit establishes an insufficient nexus between the arson and electronic devices, which presents a closer question. In particular, defendant points out that the affidavit contains only boilerplate language about electronic devices not unlike a typical drug offense warrant, without any particularized allegation that: he owned a cell phone or a computer; he had such devices when the arson was committed; or his devices would contain evidence of the crime. As other courts have noted, cell phones in particular are ubiquitous, *see, Carpenter v. United States*, 138 S. Ct. 2206, 2211 (2018) (noting that "[t]here are 396 million cell phone service accounts in the United States—for a Nation of 326 million people"), and "[i]n evaluating search warrant applications, judges may consider what is or should be common knowledge." *United States v. Reichling*, 781 F.3d 883, 887 (7th Cir. 2015) (citation omitted). Even so, the general pervasiveness of electronic devices is not enough by itself to make their seizure and search automatic: the issuing judge must be able to conclude reasonably from the contents of the affidavit that the electronic items sought are associated with the crime and located in the place indicated. For example, courts have recognized that an officer's training and experience can provide information necessary to help establish probable cause in an affidavit. *See, United States v. Zamudio*, 909 F.3d 172, 176 (7th Cir. 2018) (agent's

8

statement that drug traffickers generally store drug-related paraphernalia, records, and currency at their residences, based on his training and experience, permitted search of the residence).

Here, defendant argues that there is no allegation suggesting a specific or even general link between the arson and electronic devices. On the facts known to him at the time of the warrant's issue, however, the issuing judge could reasonably find a fair probability that electronic devices in defendant's home and possession would contain evidence of the arson. First, the affidavit alleges three people were involved in committing an obviously targeted arson of an organization that used social media to convey its messages and maintained a website to promote its goals, so evidence of tracking specific messages or the website more generally may help establish a link. Second, the affiant avers that electronic items "are likely to help identify the other people involved in the" arson. (Dkt. #24-1, ¶¶ 1, 10, 14, 32.) Third, it was also known that a social media account in defendant's name interacted with a social media post about a protest, where defendant was seen with another person spray painting graffiti like that found at the arson two months before. (*Id.*, ¶¶ 17-18, 22.) While defendant argues the government makes too much of this allegation, that is the exact police work leading to discovery of defendant's DNA. Fourth, and most importantly, there is once again no reason to think defendant knew he was a suspect until his arrest and would have changed or deleted information on his devices, since he apparently continued to act with relative impunity by participating in more protests and illegally defacing government property. Fifth, and finally, the affiant attested that even deleted information could be retrieved with forensic tools, something also

9

obvious to the experienced Magistrate Judge reviewing both warrants.

Taken together, therefore, it was certainly reasonable for Judge Crocker to conclude from the statements and surrounding circumstances that defendant probably used a cell phone or other electronic device in researching and coordinating his criminal protest activities, and that evidence of these activities and of the identities of other potential suspects would be found on his devices that he had left in his home.  In arguing otherwise, defendant relies primarily on *United States v. Griffin*, 867 F.3d 1265 (D.C. Cir. 2017).  In *Griffith*, however, law enforcement sought a warrant principally for all of the cell phones and other electronic devices found in his residence over a year after a homicide, and no reason to infer that the defendant may have continued to engage in criminal activity related to the homicide.  Moreover, that court noted the supporting affidavit for the warrant failed to demonstrate probable cause for *any* of the items sought to be seized because it conveyed no reason to think that:  Griffith even owned a cell phone; a cell phone would be likely to be found in his residence; or any phone found there would be likely to still contain incriminating evidence.  *Id.* at 1272-74.  To the contrary, unlike the defendant here, Griffith had recently completed a 10-month period of incarceration, when he could not have any cell phone, had moved into a new residence, and was aware of the homicide investigation when released.  Plus his potential coconspirator was known not to have a cell phone.  *Id.* at 1272-74.  These facts suggest that it was unlikely that:  (1) Griffith possessed the same phone, or any phone at the time of the search; (2) the coconspirators had communicated via cell phone in the first instance; and (3) even if Griffith still had the same phone, or a phone, he would not have deleted any incriminating information from it or

added any to it by that point. Based on these very different circumstances, the court finds *Griffith* unpersuasive authority.[2]

### II. Delay in Securing a Second Warrant For The Cell Phone and Laptop Found on Defendant's Person

Defendant also argues that the affidavit supporting the second warrant failed to establish a nexus between the devices seized from his person and the arson, citing in support the Seventh Circuit's opinion in *United States v. Burgard*, 675 F.3d 1029 (7th Cir. 2012). However, *Burgard* merely instructs that "*after seizing an item*, police must obtain a search warrant within a reasonable period of time." *Id.* at 1032 (emphasis added). Moreover, because there is no bright line past which a delay becomes unreasonable, nothing in *Burgard* stands for the proposition that the 37-day delay in securing a warrant here rendered the seizure of defendant's cell phone and laptop at the Boston airport unreasonable for purposes of the Fourth Amendment. Rather, each court must weigh "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Id.* at 1033 (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)). As *Burgard* recognized, the

---

[2] In fairness, the first supporting affidavit considered by Judge Crocker does not specifically allege that defendant owned a cellphone or any other electronic device, or that such devices would be in the residence. On the other hand, also unlike *Griffith*, the phones were found in defendant's recently vacated apartment, so there was reason to think it probable they belonged to him since the new lessee had not yet moved in. Further, this is not even a question with respect to the second supporting affidavit, since the devices were seized from defendant's person incident to arrest. Relevant to both affidavits is also the related question of whether incriminating information about the arson would be available on defendant's electronic devices 10 months later, but the court has already discussed a number of reasons for the Magistrate Judge to find that likely or at least probable. Plus, even the *Griffith* court itself discusses cell phone search warrants against the background of the device's ubiquity, and which the dissent emphasizes. 867 F.3d at 1272, 1285.

critical question on the individual's side of this analysis "relates to any possessory interest in the seized object, not to privacy or liberty interests." *Id*. Thus, while a longer seizure is a greater infringement than a shorter one, courts also consider whether the individual from whom the item was seized "ever asserted a possessory claim to it." *Id.* As for the government's side of the balance, courts consider "the strength of the state's basis for the seizure," and whether police were generally diligent in pursuing their investigation. *Id.* Finally, the government may appear indifferent to searching an item if there is no good explanation for a delay in seeking a warrant. *Id.*

Here, defendant's possessory interest in his cell phone and laptop was significantly diminished, if not essentially nonexistent, given his status as a pretrial detainee from the moment of his arrest until the warrant was executed and the search of the phone and laptop completed. This is because, unlike the defendants in the Fourth and Eleventh Circuit cases defendant cites, while remaining in custody he is without *any* right to possess his electronic devices. *See Bogan v. German*, 777 F. App'x 297, 302 (7th Cir. 2019) (rejecting claim that police detained plaintiff's car for an unreasonable amount of time before obtaining a search warrant in part because plaintiff "had no hope of accessing the car" while in custody). Nor did the defendant seek a return of his devices to an unincarcerated friend, relative or legal counsel before execution of the warrant. *See United States v. Jackson*, 2023 WL 3932853, at *5 (E.D. Wis. June 9, 2023) (finding *Burgard* "inapposite" since defendant had been in custody without a right to the possession of his phone since his arrest "fatally undermines [his] argument that *Burgard* controls here").

Indeed, to accept defendant's argument that he had a Fourth Amendment right to

12

ongoing access to the contents of his phone while detained would arguably mean every pretrial detainee does as well, and therefore, every institution's rule against the possession of electronic devices by detainees is unconstitutional. The court recently held otherwise, *see United States v. Sutton*, No. 22-cr-130, dkt. #41, and that is plainly not so. Although, as defendant argues, cell phones typically contain a great deal of personal information, it is only defendant's possessory interest that is at issue here. People also have strong possessory interests in many other items -- such as wallets and credit cards -- that are also logically and routinely confiscated from pretrial detainees. Although defendant calls "self-defeating" the government's argument that he never made a request for the return of his devices (dkt. #38 at 10), it is defendant who is now claiming on ongoing possessory interest in devices that he was not allowed to possess.

In short, defendant had little, if any, possessory interest in his phone and laptop in which the delay here interfered. *See Jackson*, 2023 WL 3932853, at *5 ("Because he remained in custody throughout the entire forty days, Jackson had no possessory interest in his phone with which the delay in seeking a warrant interfered"); *cf. United States v. Johnson*, 875 F.3d 1265, 1276 (9th Cir. 2017) (rejecting a one-year delay in seeking a search warrant because the parolee had a reduced privacy interest in his phone and never sought its return while he was in continuous custody since his arrest, and the phone was obtained lawfully). As for the government's interests, there was probable cause to believe that defendant's personal electronic devices contained evidence of a crime, made even stronger in law enforcement's second affidavit. Indeed, defendant concedes that there was reason enough to believe the devices seized from his person incident to his arrest, just as he was

13

about to leave the country, belonged to the defendant. Thus, it was reasonable to infer that evidence of defendant's researching and coordinating his protest activities, including with a fair probability evidence related to the arson and his coconspirators, would still be on his personal electronic devices.

Finally, while defendant maintains law enforcement were not sufficiently diligent in failing to seek a warrant until 37 days after his arrest, that argument is further undercut by the fact that local law enforcement sought the warrant within a week of the devices arriving in this district from Massachusetts by way of the FBI's courier to its Milwaukee office. Balanced against defendant's de minimis, if not nonexistent, possessory interest, all of these circumstances do not rise to the level of a Fourth Amendment violation with respect to the issuance of a warrant for his cell phone and laptop, and defendant's motion to suppress will be denied. *See Jackson*, 2023 WL 3932853, at *5 (40-day delay in seeking a warrant to search defendant's cell phone was not unreasonable where defendant was in custody and made no attempt to exercise any possessory interest over the phone).

## III. The Executing Officers Relied on the Warrants in Good Faith

As a fallback position, the government invokes the good faith doctrine announced in *United States v. Leon*, 468 U.S. 897 (1984). That doctrine provides that "suppression is inappropriate if the police officers who executed a later-invalidated search warrant did so in good faith." *United States v. Woolsey*, 535 F.3d 540, 546 (7th Cir. 2008). "An officer's decision to obtain a warrant is prima facie evidence of good faith." *Id.* Relevant here, a defendant may rebut this presumption by showing the officer submitted an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely

14

unreasonable." *Leon*, 468 U.S. at 923.

The threshold for overcoming this good-faith presumption is a "high one" that defendant has simply not met. *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012). In attempting to do so, he asserts with respect to his cell phone and laptop that no reasonable officer could believe a delay of 37 days before seeking the second warrant could be justified, and that there was no link established in the first affidavit "between the arson, the residence, and [defendant] possessing a phone." (Dkt. #38 at 14-15.) The court has addressed and rejected these same arguments above, but even if the supporting affidavits did not reach the threshold of probable cause, they at least reached the threshold of providing *indicia* of probable cause for the reasons stated, which suffices to establish the officers' good-faith reliance on the warrants issued by this court, making suppression inappropriate here.

## ORDER

IT IS ORDERED that:

1) Defendant Hridindu Sankar Roychowdhury's motion to dismiss (dkt. #25) is DENIED.

2) Defendant's motion to suppress (dkt. #24) is DENIED.

Entered this 29th day of August, 2023.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge