# FEDERAL DEFENDER SERVICES
## OF WISCONSIN, INC.
LEGAL COUNSEL

Craig W. Albee, Federal Defender
Krista A. Halla-Valdes, First Assistant

Joseph A. Bugni, Madison Supervisor
Elizabeth Blair
John W. Campion
Ramuel R. Figueroa
Jonathan Greenberg
Kyle Kent
Gabriela A. Leija
Julie K. Linnen
Dennise Moreno
Tom Phillip
Joshua D. Uller
Alex Vlisides

22 East Mifflin Street
Suite 1000
Madison, Wisconsin 53703

Telephone 608-260-9900
Facsimile 608-260-9901

April 8, 2024

Honorable William M. Conley
United States District Court Judge
120 North Henry Street
Madison, Wisconsin 53703

  Re: *United States v. Hridindu Roychowdhury*
     Case No. 23-cr-31-wmc

To the Honorable William M. Conley:

  Roychowdhury respectfully submits this sentencing memorandum requesting a guideline sentence of 60 months. On May 8, 2022, Roychowdhury did something he had never done before or since—he committed a violent act. After the leaked *Dobbs* opinion, Roychowdhury was angry on behalf of people he felt may be losing a fundamental right. He allowed this anger to rationalize his actions, and to convince him to start a fire inside the offices of an organization he disagreed with. In his words, his actions violated his own ethos. That act was unacceptable and he will now be punished with at least five years in prison.

  Roychowdhury's criminal history and offense conduct would result in a guideline range of 24-30 months. Although the mandatory minimum prohibits a sentence in that range, it is the reasonable starting point for consideration based on his individual history and conduct. The question for this Court is whether a sentence of more than double that range is sufficient.

FEDERAL DEFENDER SERVICES
  OF WISCONSIN, INC.

Page -2-

    This requires an evaluation of Roychowdhury as an individual, which is best demonstrated by the attached letters. As those in his life have attested, he is a person with a deep, demonstrated commitment to improving the lives of others. He has used the past year in jail to refocus on doing this through uplift, not anger. Five years is an enormous sentence for his first felony conviction, and is more than sufficient to accomplish the goals of sentencing. It is in parity with the guidelines, with arson sentences in this district, and sentences in recent politically-involved arson cases in other districts. In light of these factors, he requests a sentence of 60 months and, despite his ineligibility for RDAP sentencing credit, he requests a recommendation for placement in RDAP so that he can better himself and his issues with alcohol.

    **I.    Roychowdhury's extraordinary commitment to serving others is a significant indication that he will not reoffend.**

    The defense received dozens of support letters, and has attached more than 20 of those. These letters, and his own, will be shed light on his character more powerfully than this memo. What the defense seeks to point out is how one repeated theme—his extraordinary devotion to those around him—is particularly relevant to sentencing.

    Roychowdhury's letters include those from his family and partner, the types of relationships that this Court often hears from. But so many of these letters are written by people who owe him no loyalty other than what he earned through his actions. These are written by people who he has volunteered with. Kerida O'Reilly explained his work organizing and delivering groceries to the food-insecure early in the pandemic.[1] Sameera Ibrahim wrote about how Roychowdhury was the driving force behind a diaper-delivery program supporting working parents.[2] She and so many others observed the work he put in to better his community. Others observed his kindness and generosity towards new acquaintances and even strangers. Dana Dahhan described Roychowdhury observing a visibly intoxicated young person who others were ignoring, getting them care and paying for a car-ride home.[3] Gianna Davis had a debilitating panic attack at a concert, and despite being a stranger at the time, Roychowdhury's care for her not only helped her recover, but inspired a friendship.[4] Many others describe his service, from caring in a time of family grief to support of friend experiencing homelessness.[5] This is not service for

---

[1] Ex. 2:14.
[2] Ex. 2:23
[3] Ex. 2:5.
[4] Ex. 2:9.
[5] *See, e.g.* Ex. 2:12, 18.

FEDERAL DEFENDER SERVICES
   OF WISCONSIN, INC.

Page -3-

recognition or accolades, it is quiet, genuine care. Numerous letters explain that even during his incarceration, his focus has been on the welfare of those in his life.[6]

Its important to be clear about how and why these things are relevant. Extraordinary service to people does not absolve a crime. Nor are the people in his life ignoring the unacceptable act that he committed.[7] The arson is why he is before this Court. But the Court sentences people, not crimes.

By the account of almost everyone he interacts with, Roychowdhury has built his life around caring for others and building community. The act he committed in this case devasted that community. When he committed this crime, it was poorly thought out, but he understood at some level that he was putting himself at risk. He failed to grasp the pain that act would cause to so many of the people in his life. For the past year, he has had to see the faces of his parents, his partner, his friends, through a video screen. He has had to watch their faces hold back tears. He has had to hear his parents break down, wondering if they would pass away before they ever hugged their son again. Roychowdhury built his worth and sense of self on making these people's lives better. And in those moments, he had face how he had made their lives worse by putting them through this.

This is powerful deterrence. These are some of the reasons Roychowdhury would never do this again. He has had to confront how his actions were inconsistent with his values, not just in the most obvious sense of causing harm to the victims. He has had to confront how the actions he took out of anger also devastated those he cares about most.

The Court's sentencing decision in this case necessarily looks years in the future, to determine if more than five years' incarceration is necessary. Roychowdhury's history of service and care for others is not merely mitigation. It is essential to understanding how, after confronting the harm he has caused, he will not pose a risk to the community. He now deeply understands the harm he caused to the community he spent years building. In many ways, the human reality of who he is and who he is to the community speaks most convincingly to why he doesn't need a sentence above 60 months. But the other factors that this Court also militate towards that being the correct sentence.

---

[6] *See, e.g.* Ex. 2:15.
[7] *See, e.g.*, Ex. 2:1 (Anthony Flynn writing, "Despite disagreeing vehemently with the acts Hridindu has admitted to committing, my overall opinion of Hridindu has not changed in the wake of his crime, given the totality of my experiences with him.")

### II. A five-year sentence for this first felony offense is more than sufficient to accomplish the goals of sentencing.

The base sentencing guidelines in this case set a reasonable starting point. Based on Roychowhury's lack of criminal history (category I) and offense level 17, the guideline range would be 24-30 months. A mandatory minimum sentence applies, but as always, is a blunt instrument that does not take into account individual characteristics about the person or the act. When the Court examines whether to depart from the guidelines, it should begin its analysis from the 24-30 month range that reflects Roychowdhury's individual case and conduct.

The Supreme Court has helpfully summarized the statutory goals of sentencing as four purposes: just punishment, deterrence, protection of the public, and rehabilitation.[8] Here, all four sentencing factors speak to 60 months being the appropriate sentence.

#### a. Protection of the public.

Arson is dangerous. Once a fire starts, it has a life of its own. As the Court seeks to place Roychowdhury on a spectrum of culpability, one of the factors that demands comparison is dangerousness relative to other arsons.

Obviously, the guidelines account for specific conduct and dangerousness, and provide a good starting point. Another data set for answering this question is past cases. Counsel identified four arson defendants in this district since 2010. Three of these cases involved arson of an occupied building.[9] Each appears to have received a sentence within the guideline range.[10]

In an earlier filing, the defense submitted a collection of politically-involved arson cases from the last few years; these provide another comparison point.[11] Where sentences exceeded 60 months, there were significant aggravating factors present that are not present here, such as a death resulting, millions in property damage, or significant

---

[8] *Dean v. United States*, 137 S. Ct. 1170, 1175 (2017) (citing 18 U.S.C. § 3553(a)).

[9] *United States v. Johnson* and *United States v. Fierro*, 20-cr-134-jdp (W.D.WI 2020), at R. 41:2; United *States v. Lago*, 10-cr-10-bbc (W.D.WI 2010), at R. 23:3.

[10] *United States v. Johnson* and *United States v. Fierro*, 20-cr-134-jdp (W.D.WI 2020), at R. 41:4; *United States v. Johnson*, 14-cr-61-bbc (W.D.WI 2014), at R.41:4; *United States v. Lago*, 10-cr-10-bbc (W.D.WI 2010), at R. 23:5-6.

[11] R. 34-1.

FEDERAL DEFENDER SERVICES
   OF WISCONSIN, INC.

Page -5-

criminal history.[12] And these were not merely heat-of-the-moment protest cases; many of them involved premediation and specific targets.[13] The vast majority of those cases all received sentences at or beneath five years.[14]

In this case, Roychowdhury damaged the office in a way that was planned, not a impetuous escalation of protest. This planning cuts both ways at sentencing. There was intention here, which the Court will rightly seek to deter. And Roychowdhury had been involved with property damage in the context of protests. He had done graffiti.[15] He had tried building smoke bombs, with the idea of bringing them to a protest.[16] So in some sense, this act was the culmination of a strain of thought he had entertained but not acted on. While all that is true, the act of targeting a commercial building in the middle of the night was also less dangerous to life because he did it at a time when no one would be there. The Court must balance this clear premeditation, an aggravator, with the fact that this planning led to relatively less danger and destruction than many similar cases.

And although it was not his only brush with property damage, it is his only history of any kind of violent act. After this happened, it was almost a year before he was arrested. While he did eventually return to participating in protests and graffiti, he never endangered people or did anything like the conduct in this case again. Not because of the repercussions (which he wouldn't face for almost a year) but because he knew it was wrong.

---

[12] *See United States v. Edwards*, 20-cr-282 (D. Minn.) *United States v. Felan*, 20-cr-113 (D. Minn.) (defendant was criminal history category IV, committed arsons of three different buildings, received sentence of 78 months*); United States v. Henderson*, 20-cr-146 (D. Minn) (defendant was criminal history category V, attempted to burn courthouse causing hundreds of thousands of dollars in damage, received sentence of 78 months); *United States v. Rupert*, 20-cr-104 (D. Minn) (arson caused four million dollars in damage, received sentence of 105 months); *United States v. Lee*, 20-cr-168 (D. Minn.) (death resulted from arson, received sentence of 120 months); *United States v. White*, 20-cr-173 (D. Minn) (defendant was criminal history category VI, but received below guidelines sentence of 72 months).
[13] *See, e.g.*, *United States v. Henderson*, 20-cr-146 (D. Minn) (defendant was criminal history category V, targeted a courthouse causing hundreds of thousands of dollars in damage, received sentence of 78 months).
[14] R. 34-1.
[15] PSR ¶ 22.
[16] PSR ¶ 28.

FEDERAL DEFENDER SERVICES
   OF WISCONSIN, INC.

Page -6-

### b. Deterrence.

The Department of Justice has explained that long sentences are not effective deterrents.[17] Logic and research support the idea that the a higher perceived likelihood of getting caught can effectively support deterrence; long prison sentences do not.[18]

The government will no doubt argue that this Court must send a message to the community through this sentence that such behavior will not be tolerated. The implication of this argument would be that five years in prison is insufficient to send that message. But the research shows that this theory of sentencing vastly overestimates the public's awareness of crimes and punishment.[19] And this evidence is particularly lacking to support the idea of raising an already-long sentence like five years into a longer one.[20]

As to specific deterrence of Roychowdhury, he will be deterred by much more than the ultimate sentence. Roychowdhury has also had to face the fecklessness of his actions. Nothing about what happened was as he had imagined. It did not make him less angry, only more afraid. It did not improve the lives of anyone seeking abortion access. He was left facing the reality of his choice.

---

[17] *Five Things to Know About Deterrence,* U.S. Dep't of Justice, Office of Justice Programs, Nat'l Inst. of Justice (2016).

[18] *See The Growth of Incarceration in the United States: Exploring Causes and Consequences,* NAT'L RESEARCH COUNCIL, 134-40, 337 (2014) (examining empirical studies and concluding that because the marginal deterrent effect of long sentences, if any, is so small and so far outweighed by the increased costs of incarceration, long sentences are "not an effective deterrent"); Daniel S. Nagin, *Deterrence in the Twenty-First Century*, 42 CRIME AND JUSTICE IN AMERICA: 1975-2025, 199, 202 (2013) ("[L]engthy prison sentences cannot be justified on a deterrence-based, crime prevention basis.").

[19] *Deterrence and Incapacitation*: *A Quick Review of the Research*, JUST JOURNALISM (2023), https://justjournalism.org/page/deterrence-and-incapacitation-a-quick-review-of-the-research ("People generally don't have detailed knowledge of criminal penalties, and they don't expect to be caught when they commit a crime (and usually aren't)") *citing* Robert MacCoun, et al., *Do Citizens Know Whether Their State Has Decriminalized Marijuana? Assessing the Perceptual Component of Deterrence Theory*, Rev. of L. & ECON (2009), https://www.researchgate.net/publication/46556393_Do_Citizens_Know_Whether_Their_State_Has_Decriminalized_Marijuana_Assessing_the_Perceptual_Component_of_Deterrence_Theory.

[20] *Five Things to Know About Deterrence,* U.S. Dep't of Justice, Office of Justice Programs, Nat'l Inst. of Justice (2016).

FEDERAL DEFENDER SERVICES
  OF WISCONSIN, INC.

Page -7-

In other words, Roychowdhury has seen the results of the only violent act of his life, and those results are a powerful specific deterrent. He saw that this act was ineffectual to the world, but harmful to the victims and to his own community. This entire experience, from the actual night it happened, to the fear after, to the harm to his loved ones, to the years in prison he will now serve, has created incredible deterrence. This experience, combined with the five-year sentence, is more than sufficient.

### c. Rehabilitation

Roychowdhury is an example of someone who has the skills and capacity for rehabilitation. Rehabilitation does not just happens. It is a growth process that requires skills, like self-awareness, vulnerability, and focus. Roychowdhury can and has changed. As he has showed over the past year, he is not someone who will "count time" to the end of a sentence. He has busied himself with reflection, learning, and engaging meaningfully with his fellow inmates.

The needed rehabilitation will combine this self-work and the maturation process. At 28 years old, he committed this act out of anger, and it has upended his life. A five-year sentence would release him in his mid-30s. The DOJ's research shows a "steep decline" in criminal behavior "at about age 35."[21] And more specifically, Roychowdhury was engaging in the political tactics of youth. Frankly, protesting, graffiti, and property damage are typically the province of young people. When he is released in his mid-30's, on federal supervision, this is not the type of behavior he is likely to return to.

Five years in prison for a first offense is an enormous sentence. Roychowdhury will also serve that five years in custody and will be doing rehabilitation programs for his own growth, not for sentencing credit. Most other federal defendants receiving a similar-length sentence are eligible for sentence-reduction programs like RDAP or First Step Act credits. However, because of the statute of conviction, he will not be eligible for these alternatives to incarceration.

### d. Just punishment.

This final sentencing factor reflects the need to sentence similar defendants in parity, and ensure that greater sentences are justified by greater culpability. Here, Roychowdhury requests a sentence double the base guideline range. If, for instance, the offense had involved targeting an occupied building and knowingly putting the lives of

---

[21] *Five Things to Know About Deterrence,* U.S. Dep't of Justice, Office of Justice Programs, Nat'l Inst. of Justice (2016), https://www.ojp.gov/pdffiles1/nij/247350.pdf.

FEDERAL DEFENDER SERVICES
   OF WISCONSIN, INC.

Page -8-

those inside at risk, the guideline range would still be the same 60 months.[22] So if those were the facts, the argument for a departure above 60 months would be much stronger. But that isn't what happened here and it is important to distinguish Roychowdhury from a more culpable act like that. In this way, the requested sentence promotes a gradient of culpability and avoids disparities with similar-situated defendants.

## Conclusion

Hridindu Roychowdhury is a caring person who committed an unacceptable arson. He must serve five years in prison. A sentence longer than that is not only unnecessary to protect the community, it would deprive the community of a devoted altruist and genuine asset. That point is, again, best expressed in the attached letters.

He requests a guidelines sentence of 60 months in custody. Next, he requests a recommendation for his placement in the RDAP program. Finally, he requests placement in a facility as close as possible to his partner in Madison, WI.

Thank you for your time in considering this matter.

                                Sincerely,

                                */s/ Alexander P. Vlisides*

                                Alexander P. Vlisides
                                Associate Federal Defender

---

[22] Under USSG 2K1.4(a)(1), this would qualify for base level 24. This results in a total offense level 21, when combined with criminal history category I results in a guideline range of 37-46 months. After applying the mandatory minimum, the guideline range is 60 months.